J-S25025-20 & J-S25026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.K.B., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 14 MDA 2020 |

Appeal from the Decree Entered December 11, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2165 of 2019

| | | |
|---|---|---|
| IN RE: S.K.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 15 MDA 2020 |

Appeal from the Decree Entered December 11, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2019-02166

| | | |
|---|---|---|
| IN RE: D.K.B., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.B., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 52 MDA 2020 |

Appeal from the Decree Entered December 11, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2019-02165

| | | |
|---|---|---|
| IN RE: S.K.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.B., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 53 MDA 2020 |

Appeal from the Decree Entered December 11, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2019-02166

BEFORE:  LAZARUS, J., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 01, 2020**

In these appeals, D.B., Sr., ("Father") and D.W. ("Mother") appeal from the Decrees entered by the Court of Common Pleas of Lancaster County Orphans' Court, dated December 4, 2019, and entered on December 11, 2019, involuntarily terminating their parental rights with respect to their two sons, D.K.B., Jr., born in January of 2009, and S.K.W., born in May of 2011 (collectively, "Children").  Because the record supports the findings and conclusions of the orphans' court, we affirm the Decrees.[1]

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

We glean the following factual and procedural history from the orphans' court's opinion, which is supported by the certified record.  Mother has been known to Lancaster County Children and Youth Services ("CYS") since 2008.

---

[1] On February 13, 2020, and March 9, 2020, respectively, this Court, *sua sponte*, consolidated Father's and Mother's separate Notices of Appeal as to Children.  We address both consolidated appeals in a single Memorandum for ease of disposition.

Pertinent to this appeal, in January of 2018, the Manheim Township Police were called to Mother's home because Mother traveled to Philadelphia and left Children, then ages 9 and 6 years old, unattended for several days. Orphans' Court Opinion, 1/30/20, at 1-2. At that time, Father was incarcerated and had only limited contact with Children. *Id.* Accordingly, CYS obtained Orders for Protective Custody of Children. *Id.*

Thereafter, CYS filed Dependency Petitions. On January 30, 2018, the orphans' court adjudicated Children dependent. *Id.* The orphans' court developed a Child Permanency Plan ("Plan") for Mother and Father with a goal of reunification. Objectives of the Plan required that Mother: undergo mental health treatment; undergo drug and alcohol treatment; remain crime-free; attend parenting and domestic violence classes; and obtain financial and housing stability.

With respect to Father, the Plan required that he: remain free from drugs and alcohol; remain crime free; remain free of domestic violence; attend parenting classes; obtain financial and housing stability; and demonstrate an ongoing commitment to Children.

On September 4, 2019, CYS filed Petitions to involuntarily terminate Mother's and Father's parental rights to Children. The orphans' court conducted hearings on the Termination Petitions on October 8, 2019,

November 5, 2019, and December 3, 2019.[2]  CYS presented the testimony of Dominik Berthold, an adoption caseworker at Pressley Ridge; Kara Davis, a CYS caseworker; Carrie Dolphin, case management supervisor at Family Alternatives; Mark Rettew, Mother's parole officer; and Catherine Bonser, the Court-Appointed Special Advocate ("CASA") assigned to Children.  Mother appeared at both hearings and testified on her own behalf.  Mother also presented the testimony of two of her friends.  Father, who participated via telephone during the first hearing, testified on his own behalf.  The orphans' court also conducted an *in camera* interview with Children.

On December 4, 2019, the orphans' court entered Decrees involuntarily terminating Mother's and Father's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).  Thereafter, Mother and Father filed timely Notices of Appeal and Concise Statements of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

**ISSUES ON APPEAL**

Mother now raises the following issues for our review:

1. Whether the [orphans' c]ourt erred when it terminated Mother's rights?

2. Whether the [orphans' c]ourt erred in concluding that [CYS] had met its burden in proving that Mother's parental rights should be terminated when there was evidence that she had been actively working on and completing the goals [of] her [Plan]?

---

[2] Cynthia Garman, Esq., served as guardian *ad litem* and Robert S. Cronin, Esq., represented Children's legal interests.

3. Whether the [orphans' c]ourt erred in finding [sic] that terminating Mother's parental rights would best serve the needs and welfare of the children?

Mother's Brief at 8.

Father raises the following claims:

1. Whether the [orphans'] court erred in terminating Father's parental rights to the children[?]

2. Whether the [orphans'] court erred in concluding [that CYS] met its burden in proving that Father's rights should be terminated[?]

3. Whether the [orphans'] court erred in determining that terminating Father's rights when he would be getting out of jail in the near future would best serve the children's needs and welfare[?]

Father's Brief at 10.

**LEGAL ANALYSIS**

In reviewing cases in which the orphans' court involuntarily terminated parental rights, appellate courts must accept the findings of fact and credibility determinations of the orphans' court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the orphans' court made an error of law or abused its discretion. *Id.* Where the competent record evidence supports the court's findings, we must affirm the orphans' court decree even though the record could support an opposite result. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super.

2004) (citations omitted). Appellate courts defer to the orphans' court that often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." *In re Adoption of R.J.S.,* 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires the court to conduct a bifurcated analysis. *See* 23 Pa.C.S. § 2511(a) and (b). The court first focuses on the conduct of the parent, and, if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the court will analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, as provided in Section 2511(b). The courts must examine the existence of the child's bond with the parent, if any, and the potential effect on the child of severing such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). A parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his parental duties, to the child's right to have proper parenting and fulfillment of the child's potential in a permanent, healthy, safe environment. *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

While the orphans' court here found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b) with regard to Mother and Father, we need only agree with its decision as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus our analysis on Section 2511(a)(2) and (b), which provides as follows:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

**Termination Pursuant to Section 2511(a)(2)**

We first conclude that the court properly exercised its discretion by terminating Mother's and Father's parental rights pursuant to Section 2511(a)(2). Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (citations omitted). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* At a termination hearing, the orphans' court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during dependency proceedings. *Id.* at 340.

With respect to incarcerated parents, our Supreme Court has held that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental

care, control, or subsistence." *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012) (citation and internal quotation marks omitted). Notably, "the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity … cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2)." *Id.* (internal quotation marks omitted).

Also relevant are the efforts the parent made to care for a child before the parent was incarcerated as an indication of the efforts the parent will make when no longer incarcerated. *See In re Z.P.*, 994 A.2d 1108, 1126 (Pa. Super. 2010) (terminating parental rights of incarcerated father after examining his parenting history before incarceration and finding "Father's overall parenting history revealed no genuine capacity to undertake his parental responsibilities"). Another factor to consider is the parent's effort to maintain a relationship with a child while incarcerated. *In re E.A.P.*, 944 A.2d 79, 83 (Pa. Super. 2008). However, this factor is not determinative because the orphans' court may place weight on other factors even when the parent is doing what he is supposed to do while incarcerated:

> Each case of an incarcerated parent facing termination must be analyzed on its own facts, keeping in mind, with respect to subsection (a)(2), that the child's need for consistent parental care and stability cannot be put aside or put on hold simply because the parent is doing what [he] is supposed to do in prison.

*Id.* at 84. In other words, the orphans' court must consider "[t]he complete circumstances" of the case. *Z.P.*, 994 A.2d at 1125.

**Mother's Appeal**

Mother contends that her testimony established that she was making progress on the goals set forth in the Plan. Mother's Brief at 13-19. Mother

concedes that she did not complete her Plan objectives, but argues that it was error for the orphans' court not to give her additional time to complete the Plan. Mother's Brief at 9, 11 and 20.

In its Opinion, the orphans' court concluded that Children lacked essential parental care for twenty-two months at the time of the termination hearing, and that Mother failed to complete her objectives as set forth in the Plan. Orphans' Court Opinion, 1/30/20, at 4. The orphans' court explained that Mother was unsuccessfully discharged for noncompliance with attendance policies for trauma therapy, medication management, drug and alcohol therapy, and parenting classes. *Id.* The orphans' court noted that Mother reengaged in drug and alcohol counseling at another provider in July of 2019; however, at the time of the termination hearing, Mother "was in danger of being unsuccessfully discharged again for poor attendance, declining drug screenings, and positive drug screenings." *Id.* Further, Mother was discharged in January 2019 from a visitation program due to her inconsistent visitation with Children. *Id.*

The orphans' court concluded that Children lacked essential parental care, and that Mother's inability to consistently participate and comply with the Plan was the source of her repeated and continued parental incapacity. The orphans' court further determined that Mother could not remedy her incapacity. *Id.* at 6.

Having reviewed the record, we conclude that it supports the findings of the orphans' court that Mother has not provided Children with the essential parental care, control and subsistence necessary for their mental and physical well-being, and that Mother is unable to remedy the causes of her parental

incapacity, neglect or refusal any time in the foreseeable future. Thus, Mother is not entitled to relief.

**Father's Appeal**

Father contends that the orphans' court erred when it determined that CYS met its burden and terminated his parental rights to Children because he was working on his objectives set forth in the Plan despite his incarceration. Father's Brief at 13, 17-18. More specifically, Father avers that there were no additional steps he could have taken to fulfill his Plan requirements. *Id.* at 17.

The orphans' court analyzed Father's compliance with the Plan and determined that he "has failed to timely address his objectives of remaining free from drugs and alcohol, to remain crime free, to remain free of domestic violence, to learn and use good parenting, to be financially stable, and to obtain and maintain housing and an ongoing commitment to his children." Orphans' Court Opinion, 1/30/20, at 7. The orphans' court concluded Father will not or cannot remedy the causes of his parental incapacity, and that termination was appropriate pursuant to Section 2511(a)(2).

Our review of the record supports the orphans' court's findings. Father failed to make any material progress towards reunification following Children's removal in January of 2018. Although Father completed an anger management program, two parenting programs, and a vocational training program while incarcerated, Father failed to provide documentation of progress on his objectives related to being financially stable, obtaining appropriate housing, addressing domestic violence, and remaining free from misuse of drugs and alcohol. CYS Exhibit 2, Business Testimony, at 7. In the

intervening years, Father has not had any visitation with Children, but has sent letters and had minimal telephonic communication with Children. We defer to the factual findings of the orphans' court and conclude that Father, while incarcerated, "failed to utilize given resources and to take an affirmative approach to fulfill his parental duties." **In re D.J.S.**, 737 A.2d 283, 286 (Pa. Super. 1999). Thus, Father is not entitled to relief.

**Termination Pursuant to 2511(b)**

With respect to Section 2511(b), we consider whether termination of parental rights will best serve Children's developmental, physical, and emotional needs and welfare. **See In re Z.P.**, 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." **Id.** "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." **In re B.,N.M.**, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

It is sufficient for the orphans' court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. **In re Z.P.**, **supra** at 1121. The trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. **See In re N.A.M.**, 33 A.3d 95, 103

(Pa. Super. 2011). Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

The orphans' court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *See In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

**Mother's Appeal**

Mother avers that the orphans' court erred when it determined that CYS met its burden under Section 2511(b). More specifically, Mother argues that, while little testimony was provided on this issue, the testimony presented indicated that there was a bond between Mother and Children. Mother's Brief at 19-20.

The orphans' court concluded that CYS met its burden of proof pursuant to Section 2511(b), and observed:

> The best interests of [Children] are served by remaining in foster care and being adopted. The [C]hildren have been in custody for twenty-two (22) months and the [c]ourt is convinced Mother and Father will not resolve their significant issues in a reasonable amount of time. The [C]hildren remain in loving and healthy homes which are potentially permanent resources. *Id.* at 46, 50. The [C]hildren cannot wait for an indefinite period of time for the stability and care of a permanent family in the hope that their parents will drastically change their behavior and accomplish their goals. The Court Appointed Special Advocate and the Guardian *ad litem* support the termination of parental rights. N.T., 12/3/19, at 73, 83.

Orphans' Court Opinion, 1/30/20, at 7.

Additionally, the orphans' court agreed that there is a bond between Mother and Children, but proffered "that bond does not trump the fact that these children need stability. They need continuity. They need love, which I don't know that they're getting from [M]other." N.T., 12/3/19, at 91. The orphans' court found credible Ms. Davis' testimony that she observed Mother attempt to undermine D.K.B., Jr.'s placements in the past and acted in such a way "that cause[d] him to feel concerned for her well-being rather than focusing on. . . his emotional needs." N.T., 11/5/19, at 52. Moreover, the orphans' court credited the testimony that Children are developing a more secure attachment to their respective resource parents.

Thus, the record confirms that the orphans' court properly determined that terminating Mother's parental rights would best serve Children's needs and welfare. While Children have a relationship with Mother, their relationship is not one that is necessary and beneficial. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).

**Father's Appeal**

Father avers that he has maintained a bond with Children despite his incarceration. More specifically, Father contends that he maintained contact with Children via telephone and letters and "utilized every resource he had while incarcerated." Father's Brief at 17.

Father's argument is unpersuasive. The evidence demonstrated, and Father admitted, that, at the time of the hearing, Father had not seen Children since 2015. Orphans' Court Opinion, 1/30/20, at 7. The orphans' court found credible the testimony that Children stated that they know who Father is and

would like to "meet him." *Id.* In light of this evidence of a lack of meaningful contact with Father since 2015, it was reasonable for the court to infer that there is no bond between Father and Children, the severance of which would cause detriment to Children's well-being.

Our review of the record supports the orphans' court's determination and we discern no abuse of discretion or error of law. We, thus, affirm the court's determination that involuntary termination of Father's parental rights is in the best interests of Children.[3]

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion or commit an error of law by terminating the parental rights of Mother and Father to Children involuntarily. Therefore, we affirm the orphans' court's December 11, 2019 Decrees.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/01/2020

---

[3] Legal counsel for Children agrees with Mother and Father that their rights were improperly terminated because of the preferred outcomes expressed by Children against termination, the bond between Children and Mother, and Father's contact with Children from prison. Legal Interests Counsel's Brief, at 3, 5-6, 9-10. Because Children need stability and Mother cannot provide them with stability, and Children do not have a meaningful bond with Father, we reject legal counsel's argument that the trial court failed to consider the best interests of Children.